May it please the Court, Brian Pomerantz on behalf of Petitioner Appellant James Milne. Under Hill v. Lockhart, Mr. Milne has made out a successful and effective assistance of counsel claim. I don't see why Hill v. Lockhart applies to this, and it seems to me you're better off if it doesn't. This is a case about a motion to withdraw a guilty plea to which a completely different standard applied at the outset. Is that not right? I believe that either Hill — first off, Your Honor, before I answer that question, I believe that either Hill or Strickland would apply in this case. I'm sorry? I believe that either Hill or Strickland would apply to this case. Yes. But the standard that I believe you're referring to is the California Penal Code Section 1018 standard. Yes. And in general, the considerations that apply to the sanctity of a guilty plea are different than apply to the underlying substantive standard with regard to withdrawal of a plea. So I would think that an ordinary Strickland standard would apply to a motion to withdraw a plea entered into before the final judgment in the underlying proceeding. Either way, Mr. Milne should prevail, because in either case, a reasonable probability standard should have been used, and that was not used in this case. There was a reasonable probability that but for substitute counsel's errors in this case and his deficient performance, Mr. Milne would have been allowed to withdraw his guilty plea to Strickland as well as Hill. Mr. Milne believes that because there's a reasonable probability that the results of the proceeding would have been different, that the trial court would have granted the withdrawal motion but for the errors. And the errors are, first off, it's important to separate that there were two counsel here and there were two counsel's errors. But the remand order specifies substitute counsel. And substitute counsel failed to do anything in this case. His performance was abysmal. He did nothing. He didn't interview Mr. Milne. He didn't meet with Mr. Milne. He didn't investigate. He didn't pull his medical records, although that was clearly an issue. Mr. Milne at the time of his plea withdrawal motion in December of 1998 said that he was suffering effects, he said, of psychotropic medications, clearly putting mental illness into play. Despite that fact, substitute counsel failed to ever pull those. But it turned out he wasn't taking the psychotropic medication. That's absolutely correct. He was not taking the psychotropic medications. He was, however, suffering from the effects of bipolar disorder. That was testified to by both experts at the evidentiary hearing, both the Petitioner's expert and Respondent's expert. Petitioner's expert opined on the ultimate issue, saying that Mr. Milne, at the time of the September 1998 plea, would have been suffering the effects of bipolar disorder and that the effects that he had been suffering, the impulsivity that he would have been suffering, would have prevented him from entering a knowing and intelligent plea at the time. Respondent's expert, on the other hand, never opined on the ultimate issue. He never gave any opinion on September 1998 at any point during the evidentiary hearing. So before, the district court was one opinion and one opinion only, uncontroverted, that Mr. Milne was incompetent to have pled in September 1998. So you have to argue that the last state court decision was objectively unreasonable in its determination. What's your argument for that? It was an objectively unreasonable application of Strickland or Hill, whichever you prefer to go under, because the state court used a clear and convincing standard, lifting that from California Penal Code Section 1018, whereas Strickland would say that you have to use a reasonable probability standard. The state court never used that. They never analyzed it under the proper Supreme Court law, which was clearly established at the time of its holding. For that matter, the district court didn't use the reasonable probability standard either. Isn't also – isn't there also a problem about the fact that there was an evidentiary hearing after the state court opinion so that there's a different factual record now? Certainly, it would have been nice to have had an evidentiary hearing at the time. It would have been nice to have had substitute counsel. How do we review – this came up in another case the other day, and I gather our case law is a bit confused about this. How do we review a factual determination in a state court that was made in a different record than the one that we're making – that we're dealing with? Why do we review that for reasonableness when it's not even the same set of facts? Well, I think the problem here is the facts were not before the state court. I understand that. So I'm suggesting that perhaps it's a de novo standard or something other than a deferential standard, and I think there is some support for that, although I think it's confused. Do you know anything more about that? I would agree with Your Honor that it should be a de novo review, but I don't know the case law. I don't know the case law on that that would support it. I'm sorry. But it would seem logically that if there aren't facts for the Federal court to defer to, then we have a problem. My understanding is there's some case law like that in other circuits, and our case law maybe is confused.  My understanding is that we do de novo review. So suppose we were going to do de novo review of the district court's decision. He still found against your client that there was not an effective assistance of counsel. And we would have to say that he clearly erred if we were going in his factual findings. Yes, Your Honor. Well, what's interesting about the district court's findings are that the district court effectively conceded performance, saying that there was arguably deficient performance. The district court admitted that Mr. Milne arguably should have been medicated at the time. And I think it's important to note that Mr. Milne was, according to the experts, much better off once he actually was medicated. And in December of 1998, when he stood up before the court for the first time and said, I didn't know what I was doing, and I want to withdraw my plea, at that point he was medicated. He was medicated. He was doing much better. The psychiatric report. The magistrate judge specifically found that your client was not credible in his testimony about being incompetent to plead guilty. He did find that. It goes without saying that when you've pled that you're on medications, and then it turns out you're not on medications, there's a credibility problem. He's cited to numerous inconsistencies in the record. Mr. Milne is mentally ill. That was uncontroversial. Mr. Milne is mentally ill. Well, of course, it's a question of how mentally ill is he. He had bipolar disorder. His own doctor didn't seem to say that he was really in a high degree of mental illness. Well, Mr. Milne's mental illness at the time of September 1998, as I mentioned earlier, was opined to by Dr. Lavitt and not opined to by Dr. Anthony. Dr. Lavitt felt that he was severely mentally ill at the time. Due to Mr. Milne's mental illness, his self-reporting is not credible. But you don't need to rely on Mr. Milne to determine that there was an improper determination made in the district court. The district court failed to consider the prejudice in this case. And the prejudice in this case was the fact that Mr. Milne, number one, didn't have the reasonable probability standard used that should have been used. Number two, in the self- Where in the magistrate judge opinion do you find that he didn't apply the right standard? He never mentions. He uses clear and convincing evidence as his standard that he uses in. I will have a cite for Your Honor on rebuttal if I may. But I do have the pinpoint cite for that. I'd actually like to reserve the rest of my time for rebuttal if there are no questions. You may. Thank you. May it please the court, Deputy Attorney General Barry Carlton on behalf of Appellee. When this case was before this court before, this court had two questions. One of which is at issue today. One of the questions the court had was, was Mr. Milne under the influence of psychotropic medication? This court sent that question back to the district court to make that determination. We went back to the district court. We made that determination. And when it became apparent to Mr. Milne that he was going to lose that determination because contrary to his insistence throughout the entire proceedings that he was under the influence of psychotropic medications, he was not under the influence because he had not been prescribed them until two months after the date in question. Mr. Milne didn't skip a beat. Mr. Milne said, well, the problem then was that I should have been under the influence of psychotropic medications. That is a new claim. And it goes beyond the mandate of this court. In the case of Thrasher, which ‑‑ Is it really a new claim, though? It seems to me that the theory is the same, that his mental state was such that he was not competent to plead guilty. That's his new theory. His old theory, and under Male v. Felix, U.S. Supreme Court authority, they emphasize that the question in habeas, habeas is a factually based plea. It's not a notice case. It's also the old theory. I mean, the only difference is why was his mental state that way. One is because he was taking medications, and the other one is because he had mental illness and he wasn't taking medications. But as it affects the legal question, which is was he competent to stand trial, the issue is the same. Well, again, it's a theory has to have a factual component. And here, for instance, he's claiming ‑‑ let's go back in time to when we were before the court. He says, I was under the influence of psychotropic medication. What's the defense to that? The defense to that is no, you weren't. Isn't this a very good example of why these procedural defenses just waste everybody's time? You had a hearing. You have a ruling on ‑‑ we can review the ruling. Why should we be going back five steps and saying the judge was wrong and thinking that there was an exhausted claim? Wasn't it better to get everything out on the table and get a decision by the judge? It would be nice if Respondent had had some sort of notice that that was what was going to be on the table. I certainly would have prepared ‑‑ Well, you won anyway, so what's your problem? Well, I like the result. Right. Yes. I mean, but the, you know, I guess the anal retentive in me says, no, we've got to do this right. We have to dot the I's and cross the T's or whatever. He had an expert. The expert asked the right questions and testified to them. You actually knew before the hearing that he had not taken the medications. And you did put on a defense with regard to his overall mental state, because obviously that was an issue. And I mean, it's a good example, it seems to me, if we cut the issues too narrowly, we never get the facts out. And we did here, and now we know what happened. Well, let me back up. In preparing for this hearing, you know, as is apparent from the record, I called one expert. That was Dr. Anthony, this reading physician. My only preparation for him was, look at your medical records. Was it really true that this guy was under the influence? And the answer was no. Well, he went on to give some detailed opinion about the bipolar disorder and relatively minor phase. And so he supported the position. And it might be better for you to get on to argue whether the district judge was correct. I will do that, Your Honor. And if I could just preface that by a little bit, the reason that he offered those opinions, the reason I brought that out was because this issue had suddenly jumped on me. I had to do what I could do. You did very well, and let's see what happened. You handled it very well. So let's go on to the merits. I accept my gold star, and I will move on. Thank you. The issue, as it turns out, there was all sorts of evidence that Mr. Milne was perfectly competent to plead guilty, and which means that there was no ineffective assistance counsel for failure to find this. And here's the evidence. I count up five witnesses who say that Mr. Milne was competent. Defense counsel testified at the hearing, saying Mr. Milne seemed okay to me throughout this whole proceeding, except a couple times when he appeared to be faking mental illness. Why was he faking? Well, because until he went into court and said, I don't understand anything, he and I had been discussing this whole thing, and he'd been making sense. So I think he wanted to go to patent. The co-defendants testified, both of them under oath, in the district court. Mr. Milne was perfectly okay until he started taking these drugs, and these drugs made him mumble and talk to himself and stuff. But without the drugs, clear as a tack, sharp as a tack, clear as a bell, something like that. He was fine without the drugs. Dr. Anthony said, in the testimony for which I get my gold star, apparently, Dr. Anthony said, when I talked to Mr. Milne in November, mind you, this is two months after the plea, he was relevant, he was coherent, he knew what was going on. His only problem was his thoughts were racing, and he just wasn't real happy with things, and that's why he came to me. Couldn't sleep. Complained about that. But he wasn't delusional. He, you know, he knew what was happening. He wasn't out of it. And if you look at that, particularly if you combine it with Dr. Levitt's testimony, Dr. Levitt said Mr. Milne was on the downward spiral. Well, let's go back two months. One would presume that Mr. Milne was a little bit better two months before when he actually pled guilty, and even at November, when he's talking with Dr. Anthony, he's pretty much okay. Did the district court, how, what did it say about the defense psychiatric witness to deal with, did he disbelieve him, or did he think he wasn't relevant, or what? I'm not entirely clear what the district court thought about Dr. Levitt. I think the district court took all the evidence in conjunction and said, this is just Mr. Milne was incompetent for whatever reason. And so this is where your opponent says, why is he talking about clear and convincing evidence? He's talking about clear and convincing evidence because that is the standard in California for justifying withdrawing a plea. So the question we have here is a twofold question. To withdraw his plea, Mr. Milne would have had to present the State court with clear and convincing evidence that his will had been overborne. In other words, in this case, clear and convincing evidence that he was under the influence of medications. I thought it was a fairly loose standard in California, no? I'm sorry, Your Honor? I thought it was a fairly loose standard, no? The language that they use in the State opinions is this clear and convincing language. It's a, I would have to disagree. I think it's a fairly strict standard because the State courts don't want to be trifled with. But if I could back up just for a second, I left out the most important witness of all as to Mr. Milne's competence. And that was his own declaration. Mr. Milne himself, in the traverse, the first time this case went to the district court, said, you know, I was perfectly fine until I started taking these psychiatric medications. Statement under oath. And when I took the medications, it screwed me up. When I stopped taking them, I, my mind was clear again. So all that evidence indicates and certainly supports the trial judge or the district court's finding this time around, factual finding, that there was no clear and convincing evidence that Mr. Milne was incompetent for any reason. And so that, that, I think that opinion, that finding by the district court is bullet proof based on this evidence. So, and yes, I think for that reason, the court's opinion needs to be upheld. I would make a couple of, of corrections here, I suppose. Council has argued that Attorney Sandberg did not do a number of things. I don't think the record goes that far. The record simply indicates that Mr. Sandberg didn't remember what he did on this case. We don't know what he did or didn't do. The court assumed that he didn't do these things, and it was just that, an assumption. We don't know either way. I think the important thing is that there was no prejudice, as the court found. And I would, I would emphasize, too, again, as I, as I mentioned earlier, I think in, in our briefing, we talk about the, the argument that this is actually a different claim, that there's no relation back. I used the civil notice standard. There was some case authority I cited in there for that. In light of the Mail v. Felix case, I would, I think that was perhaps a little bit too generous on our part. It really is a factual-based pleading. Based on all that, Your Honor, and I see my time has come, has gone to zero and beyond, we would submit. All right. Thank you very much, counsel. Thank you. Mr. Pomerantz. What is the standard in California for withdrawing a plea before the final judgment in a, not, not for contesting the plea later, but for withdrawing it? Good cause by clear and convincing evidence. Sounds a little contradictory, but. It does sound contradictory. And it's, that's been, I think that's been a problem for the California court in, in many cases because there seems to be. Well, it's written by the legislature, so. First off, before I say anything else, I'd like to give Judge Berzon the site I promised is at ER 29. That's where the district court is. All right. Thank you. I think it's telling that the State wants to pick and choose when testimony is credible and when it's not. The, we should rely on Mr. Milne's testimony for some things, but not others. Generally rely on the district court to make those determinations. Exactly. And the credibility and so forth. Exactly. And, and whether Mr. Milne was credible at the time of the evidence you're hearing is, is actually irrelevant to this Court's issue today. What's at issue today is whether substitute counsel performed and whether Mr. Milne was competent at the time he pled. Mr. Milne, Mr. Milne does have credibility problems, and those seem to be tied to his mental illness. What's interesting is that the State wants to take Mr. Milne's pleadings and Mr. Milne's testimony at the evidence you're hearing and say he's clearly not credible, but then at the same time say he was completely credible when he knowingly and intelligently pled in September 1998. Well, and also when he made the statement that he had been on psychotropic medicine when he pled guilty. He said, he declared that. He did declare that, and he was, he was confused. He did declare that, and he was confused. As far as this being a new theory, this is not a new theory. This was pled in the State. It was pled in his petitions to the California Supreme Court. Mr. Milne contended ineffective assistance of counsel for failure to investigate whether Mr. Milne was mental incompetent and heavily sedated during trial and or the condition impaired his judgment. That's in the record of 266 and 267. He also said in an earlier petition the fact of being medically and mentally impaired and being mentally impaired, not mentally impaired as a result of medication. That's in the record of 278. The, well, he doesn't use that broad language conceitedly in his federal petition. He was a pro se petitioner, and he's supposed to be given a presumption of, of liberality in those pleadings. And that, those points were made prior to the, to the courts in California. The, the district court answering one of the questions that was asked earlier made no credibility findings of either doctor. It seemed to make an inferential finding of Dr. Anthony over Dr. Leavitt by the fact that it ruled for a respondent. But it's unclear from the testimony how it arrived at that. Dr. Anthony was evasive in his answers. He didn't, he didn't answer many of the questions on cross-examination. And it's unclear to me how it arrived at that. What has the impression that he arrived at it by saying that neither of these doctors really knew what his condition was at that time, and he therefore relied largely on other things? The district court very well may have done that. I, I think that Dr. Leavitt, though, was very quick in his testimony on what he believed. Counsel, you're over your time. I'm sorry. I'd like to just say that I believe that the fact that it's reasonably probable that but for substitute counsel's failure to investigate, Mr. Milne would have been able to withdraw his plea. He's made out a successful and effective assistance claim based on the lack of performance by, by substitute counsel based on the prejudice of the fact that he wound up with a longer sentence than a far more facially culpable co-defendant did. And Mr. Milne would ask that this Court vacate his conviction and sentence. Thank you for your time and consideration. Thank you very much, counsel. Milne v. Lewis will be submitted. We'll take up Bristano v. Scribner.
judges: Wardlaw, Berzon, Miner